

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

YEN KIM LY, *et al.*,  )
                              )
         Plaintiffs,  )
                              )
v.                                )  Civil Action No. 1:16-cv-01447 (JCC/IDD)
                              )
DUNG TRAN,  )
                              )
         Defendant.  )
                              )

**REPORT AND RECOMMENDATION**

This matter is before the Court on Plaintiffs' Motion for Default Judgment against Defendant Dung Quoc Tran ("Defendant") pursuant to Federal Rule of Civil Procedure 55(b)(2). (Dkt. No. 41.) After neither Defendant nor a licensed attorney for Defendant appeared at the hearing on May 19, 2017, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation. The Court notes that Defendant wrote to this Court on various occasions but has failed to file an Answer or indicate an intention to file an Answer in this matter.[1] (Dkt. Nos. 10, 18, 19, 47, 54, 56.) Upon consideration of the Complaint, the Motion for Entry of Default Judgment, and the supporting documents, the undersigned Magistrate Judge makes the following findings and recommends that Plaintiffs' Motion be **GRANTED**.

## I.    INTRODUCTION

Plaintiffs Yen Kim Ly, Mai Anh Tran, and Baothu Huynh Nguyen ("Plaintiffs") filed their Complaint, *pro se*, on November 18, 2016, for fraud and fraudulent inducement to contract,

---

[1] Defendant wrote the Court requesting continuances, updating the Court of his address, and explaining his situation in Vietnam. (Dkt. Nos. 10, 18, 19, 47, 54.) In Defendant's letter regarding his situation in Vietnam he alleges harassment related to this lawsuit and its negative effect on Defendant's singing career. (Dkt. No. 54.) The undersigned finds that neither his letters requesting a continuance (Dkt. Nos. 10, 47), nor his letter alleging harassment, affect the relevant facts or law related to this Report & Recommendation. The Court notes for the record that Plaintiffs filed a response to Defendant's Letter denying Defendant's allegations. (Dkt. No. 55.)

1

seeking punitive and compensatory damages, costs, and attorney's fees. (Compl. at 1.) Plaintiffs moved for default judgment against Defendant and a hearing on the Motion for Default Judgment was held on May 19, 2017. (Dkt. No. 49.)

### A. Jurisdiction

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). The court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment.

#### i. Subject Matter Jurisdiction

This Court has subject matter jurisdiction over the claims pursuant to 28 U.S.C. § 1332(a)(1) because diversity of citizenship exists between Plaintiffs and Defendant and the amount in controversy exceeds $75,000. The Complaint alleges compensatory damages in the amount of $279,944.18[2] exclusive of interest and fees, thus meeting the amount in controversy requirement. (Compl. at 7, 12, 15.) As to citizenship, Plaintiff Yen Ly is a resident of Virginia. (Compl. ¶ 24.) Plaintiff Mai Anh Tran resides in Ontario, Canada. (Compl. ¶ 71.) Plaintiff Baothu Huynh Nguyen resides in Minnesota. (Compl. ¶ 100.) Defendant represents that his address is in Oklahoma. (Dkt. No. 19.) Because Plaintiffs and Defendant have complete diversity of citizenship and the amount in controversy exceeds $75,000, this Court has subject matter jurisdiction over this case.

#### ii. Personal Jurisdiction

A federal court may exercise personal jurisdiction over a non-resident in the manner provided for by the law of the state in which it sits. *Consulting Eng'rs Corp. v. Geometric, Ltd.*,

---

[2] In their Complaint, which Plaintiffs filed *pro se*, they allege in the Introduction that they loaned Defendant over $314,500.00. (Compl. at 2). However, in Counts I through III, Plaintiffs specify loans adding up to only $279,944.18. (Compl. at 4–14.) The issue of damages is detailed and clarified thoroughly below.

2

561 F.3d 273, 277 (4th Cir. 2009). A two-step analysis is required to evaluate personal jurisdiction pursuant to a long-arm statute. First, the court must determine whether the Virginia long-arm statute reaches the defendant. Second, if the first step of the analysis is met, "the court must determine whether the statutory assertion of jurisdiction is consistent with the due process clause of the Constitution." *Affinity Memory & Micro, Inc. v. K&Q Enters., Inc.*, 20 F. Supp. 2d 948, 952 (E.D. Va. 1998).

Virginia's long-arm statute Section 8.01-328.1(A)(1) allows a court to exercise personal jurisdiction over a person "as to a cause of action arising from the person's . . . transacting any business in this Commonwealth." The "pertinent factors for assessing whether a defendant has transacted business in the forum are (i) where any contracting occurred, and where the negotiations took place, (ii) who initiated the contact, (iii) the extent of the communications, both telephonic and written, between the parties, and (iv) where the obligations of the parties under the contract were to be performed." *Affinity Memory & Micro, Inc.*, 20 F. Supp. 2d at 954.

To satisfy the requirements of due process, a defendant must have sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Specific jurisdiction exists where the defendant "purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citations and internal quotation marks omitted).

The Fourth Circuit "has synthesized the due process requirements for asserting specific jurisdiction [into] a three part test . . . (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise

out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp.*, 561 F.3d at 278. Furthermore, Defendants must be properly served with process under federal or state law.[3] *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).

Plaintiffs have pled sufficient facts that this Court may exercise personal jurisdiction over Defendant. First, Virginia long-arm statute Section 8.01-328.1(A)(1) applies to Defendant. Defendant's actions satisfy all four pertinent factors to consider when evaluating whether an individual's actions constitute transacting business. *See Affinity Memory & Micro, Inc.*, 20 F. Supp. 2d at 954. First, Defendant met with Plaintiff Ly at her parents' home in Chantilly, Virginia, for the purpose of securing a loan. (Dkt. No. 51 at 2, 5.) Second, Defendant initiated contact with Plaintiff Ly to convince her "to give him money for a purported business venture." (*Id.*) Third, Defendant communicated by email and text periodically with Plaintiff Ly, including signing a promissory note to repay the loan when he met with Plaintiff Ly in Chantilly, Virginia. (*Id.*) Fourth, Defendant promised to repay Plaintiff Ly. (Compl. ¶ 38.) Logic follows that Defendant would have paid Plaintiff Ly back by contacting her at her home in Virginia.[4]

---

[3] Defendant was properly served with process, as discussed below.

[4] Plaintiffs assert in their Memorandum in Support of their Motion for Default Judgment (Dkt. No. 43) and their Supplemental Memorandum Setting Forth Factual and Legal Support for this Court's Personal Jurisdiction over Defendant (Dkt. No. 51) additional claims for personal jurisdiction that this Court found were not supported by law or fact. Therefore, Plaintiffs' following arguments were not applied to this Court's analysis of its personal jurisdiction over Defendant.

First, Plaintiffs assert that Defendant's promissory note was notarized in the Commonwealth of Virginia (Dkt. No. 51 at 2, 5) (noting that page four of Plaintiff Ly's affidavit includes a notarized promissory note). Although this Court accepts as true that Defendant visited Plaintiff Ly in Virginia and executed a promissory note in Virginia, the record does not support that the promissory note was notarized in Virginia. (Dkt. No. 51 at 2, 5.) A review of the record reveals that the actual promissory note is handwritten in Vietnamese and signed on July 24, 2013 at a location not specified in the letter. The notarized document on page four is a certified translation of the handwritten Vietnamese letter. The certification of translation was notarized more than three years later on November 5, 2016 in Virginia. The location where a letter was translated has no bearing on personal jurisdiction over a defendant and therefore does not support Plaintiffs' claim for personal jurisdiction over Defendant.

Second, Plaintiffs claim that Defendant's Motions to Continue (Dkts. No. 10, 47) constitute responsive pleadings. Plaintiff argues that because Defendant did not raise issues regarding personal jurisdiction that Defendant has

Second, exercising personal jurisdiction over Defendant is consistent with the due process clause of the Constitution. Applying the Fourth Circuit's test, Defendant purposefully availed itself of the privilege of conducting activities in Virginia by meeting with Plaintiff Ly in Chantilly, Virginia to borrow thousands of dollars from Plaintiff Ly. (Dkt. No. 51 at 2.) Defendant secured these loans based on misrepresentations of fact and failed to repay Plaintiff Ly. (*Id.*) Furthermore, Plaintiff Ly's fraud claims arise from the meeting in Virginia and the many texts and emails sent to Plaintiff Ly in Virginia. (*Id.* at 2, 5.) Because the cause of action arises out of Defendant's fraudulent activity in Virginia, exercising personal jurisdiction over Defendant would be constitutionally reasonable. Therefore, this Court has personal jurisdiction over Defendant.

### B. Venue and Joinder

Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. (Compl. ¶¶ 25–50.)

Joinder of Plaintiffs Yen Kim Ly, Mai Anh Tran, and Baothu Huynh Nguyen is proper pursuant to Fed. R. Civ. P. 20. Plaintiff Yen Kim Ly is a resident of Chantilly, Virginia; Plaintiff Mai Anh Tran is a resident of Mississauga,[5] Ontario, Canada; Plaintiff Baothu Huynh Nguyen is a resident of Brooklyn Park, Minnesota; Defendant Dung Quoc Tran resided in California when this suit was filed and updated his address to Oklahoma City, Oklahoma. (*See* Compl. at 16; Dkt. Nos. 2, 9, 10.) Defendant also claims to live in Vietnam. (Dkt. No. 10.) The Complaint alleges

---

waived any objection to personal jurisdiction. (Dkt. No. 51, at 2, 5). Virginia Code Section 8.01-277.1(B)(1) states that a "person does not waive any objection to personal jurisdiction or defective process if he engages in conduct unrelated to adjudicating the merits of the case, including, but not limited to: [r]equesting or agreeing to an extension of time." Therefore, Defendant filing motions to continue hearing dates does not constitute a waiver of objection to personal jurisdiction.

[5] Plaintiff Tran asserts in various documents to live in Toronto, Ontario and Mississauga, Ontario. Mississauga is a town in the province of Ontario next to Toronto. Whether Plaintiff Tran lives in Mississauga or Toronto is not material.

that Defendant defrauded all three Plaintiffs out of thousands of dollars by telling them various lies to garner sympathy and by promising to pay them back. (Compl. at 2, 6–15.) Joinder is proper under Rule 20 because all three Plaintiff's claims arise from a common question of law or fact, the parties are completely diverse, and subject matter jurisdiction, personal jurisdiction, and venue requirements are met.

## C. Service of Process

For a court to have personal jurisdiction over a defendant for the purpose of entering default judgment, the plaintiff must properly serve the defendant under federal or state law. *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 444–45 (1946) (stating that "service of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served"); *Cent. Operating Co. v. Util. Workers of Am.*, 491 F.2d 245, 249–51 (4th Cir. 1974) (reversing the district court's entry of default judgment because the court lacked personal jurisdiction where the plaintiff failed to effectively serve the defendant with summons and complaint). The Federal Rules of Civil Procedure provide the manner in which service must occur.

Federal Rule of Civil Procedure 4(e) governs service upon an individual and allows service by "delivering a copy of the summons and of the complaint to the individual personally [or] leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." FED. R. CIV. P. 4(e)(2)(A)–(B). On November 22, 2016, a certified process server served Defendant with the Summons and Complaint at his dwelling in Oklahoma.[6] (Dkt. No. 9.) Therefore, Plaintiffs properly served Defendant pursuant to

---

[6] Defendant wrote to this Court requesting a continuance because the Complaint and Summons were left with his parents in Oklahoma City, Oklahoma. (Dkt. No. 10.) Pursuant to Fed. R. Civ. P. 4(e)(B) service is proper if left at the individual's dwelling or usual place of abode with someone of suitable age, such as Defendant's parents. It is unclear from the record if Defendant lived with his parents at the time service was executed. What is known is that

6

Rule 4(e).

### D. Grounds for Default

On November 18, 2016, Plaintiffs, acting *pro se*,[7] filed their Complaint against Defendant for fraud and fraudulent inducement to contract. (Compl. at 1.) A certified process server served Defendant on November 22, 2016. (Dkt. No. 9.) On January 13, 2017, after Defendant failed to Answer, the Clerk of Court entered default against Defendant. (Dkt. No. 13.) On April 12, 2017, Plaintiffs filed the pending Motion for Default Judgment. (Dkt. No. 41.) This Court held a hearing on the Motion for Default Judgment on May 19, 2017. (Dkt. No. 49.) After Defendant failed to appear or Answer,[8] the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation.

### II. FINDINGS OF FACT

Upon a full review of the pleadings, the undersigned Magistrate Judge finds that Plaintiffs have established the following facts. Plaintiffs Yen Kim Ly, Mai Anh Tran, and Baothu Huynh Nguyen, all individually loaned money to Defendant Dung Quoc Tran, with the expectation that he would pay them back. Defendant is a notable Vietnamese singer and performer who performs in the United States, Europe, Australia, and Vietnam. (Compl. at 1.) Defendant told Plaintiffs a variety of reasons about why he needed money, including that he

---

Defendant's parents gave the papers to Defendant, at which time he wrote this Court for a continuance. (Dkt. No. 10.) Furthermore, the certified process server declared under penalty of perjury that he personally served Defendant in Oklahoma City, Oklahoma. (Dkt. No. 9.) Therefore, this Court finds that the record indicates that Defendant was properly served.

[7] Plaintiffs were *pro se* when they filed their Complaint on November 18, 2016. Plaintiffs later obtained representation and were represented when they filed their Motion for Default Judgment on April 12, 2017.

[8] Defendant failed to appear at the hearing on the Motion for Default Judgment. Defendant's deadline to file an Answer was December 13, 2016. On July 6, 2017, the Court received a letter from Defendant confirming by implication his liability as to Plaintiffs Ly and Nguyen. (Dkt. No. 56.) In the letter, Defendant also discussed some of the loans provided by Plaintiff Tran. (*Id.*) The undersigned does not construe this letter as a proper Answer. Although this letter discusses liability it does not actually admit or deny allegations in the Complaint. Furthermore, Defendant did not file a motion for leave to file an Answer out of time. The Court notes for the record that Plaintiffs filed a response to Defendant's Letter stating their position and denying many of Defendant's allegations. (Dkt. No. 59.)

needed money for travel expenses, to save a business he falsely purported to own, to fix his car, to pay for medical expenses for terminally ill family members, and to pay for attorney's fees for a crime he allegedly committed in high school. (Compl. ¶¶ 17–19, 40.) Plaintiffs allege that Defendant needed the money to pay off various gambling debts. (Compl. ¶¶ 20–22.)

### A. Plaintiff Yen Kim Ly

On July 18, 2013, Plaintiff Yen Kim Ly and her husband Thach Nguyen met Defendant at a temple in Frederick, Maryland. (Compl. ¶ 24; Ly Aff. ¶ 1.) Plaintiff Ly is a resident of Chantilly, Virginia. (*Id.*) Between July 23 and July 26, 2013, Defendant reached out to Plaintiff Ly for a total of $20,000.00. (Compl. ¶ 25; Ly Aff ¶ 6.) Defendant claimed that he needed $15,000.00 to save his restaurant from closing and that he only needed the money for a "short period to bridge expenses at the restaurant." (Compl. ¶¶ 29, 37.) Defendant later claimed he needed an additional $5,000.00 to get his vehicle back to drive to work so that he could pay back the initial $15,000.00 loan. (Compl. ¶ 40.) On July 26, 2013, Defendant sent Plaintiff Ly's husband an email thanking Plaintiff Ly and her husband for the additional $5,000.00. (Ly Aff. ¶ 5.) Defendant told Plaintiff Ly that he owned the restaurant Tren Restaurant and Bar, Inc., which he would place as collateral for the $20,000.00 loan. (Compl. ¶¶ 27–30.) Defendant did not own Tren Restaurant and did not have any business interest in the restaurant. (Compl. ¶ 31.) Tren Restaurant was owned by Plaintiff Mai Anh Tran and Minh Tuyet Tran, who never authorized Defendant to capitalize on or represent Tren Restaurant. (Compl. ¶ 34.) On July 24, 2013, Defendant executed a promissory note to repay the loan within one year. (Ly Aff. ¶ 5.) Plaintiff Ly asserts that Defendant would not execute the promissory note without receiving the additional $5,000.00 and that he never intended to honor the initial loan. (Compl. ¶¶ 39, 41.) After Plaintiff filed this lawsuit, Defendant paid back $2,000.00 on the loan. (Ly Aff. ¶ 7.) Defendant has failed

to pay back the rest of the loan or interest on the loan. (Ly Aff. ¶¶ 7, 11.) The undersigned finds that Plaintiff Ly has established sufficient facts to demonstrate that Defendant owes Plaintiff Ly $18,000.00.

### B. Plaintiff Mai Anh Tran

Plaintiff Mai Anh Tran met Defendant through Facebook in January 2010. (Compl. ¶ 51.) Plaintiff Tran and Defendant had a romantic relationship and Defendant visited Plaintiff at her home in Toronto, Canada. (Compl. ¶ 52; Tran Aff. ¶ 2.) In January 2010, Defendant told Plaintiff Tran that he needed $10,000.00 to pay off a gambling debt in order to save his professional career. (Compl. ¶ 53; Tran Aff. ¶ 3.) Plaintiff Tran gave Defendant $10,000.00 in January 2010. (Compl. ¶ 55.) In July 2013, Plaintiff Tran gave Defendant another $70,000.00, for which Defendant signed a promissory note promising to pay back the loan in October 2013. (Compl. ¶ 58; Tran Aff. ¶ 5.) Defendant did not pay back this loan and provided Plaintiff Tran with various reasons as to why he could not pay back the loan, including the following: that Defendant shot a man in high school, a crime for which his friend was falsely accused and that Defendant wanted to provide $20,000.00 to his friend's wife to care for their children; to book flights to his performances; to pay debts to his friends and co-workers; to pay his boss in order to keep his job; to pay gang members money for drug deals gone awry; and more. (Compl. ¶ 58.)

Between June and December 2014, Defendant repeatedly called Plaintiff Tran and pleaded with her to borrow money claiming that he owed gang members money who would kill him if he did not pay them back. (Compl. ¶ 59.) Defendant represented that he was fearful for his life. (Compl. ¶ 61.) Because of these calls, Plaintiff Tran flew to the United States from Canada to meet with Defendant. (Compl. ¶ 60.) Plaintiff Tran refinanced her home to give Defendant $62,394.18 to repay the alleged gang members. (Compl. ¶ 62.) On January 9, 2015, Defendant

executed a promissory note acknowledging receipt of Plaintiff Tran's $62,394.18 loan with interest of 12%, and agreeing to pay back the money monthly beginning on February 9, 2016.[9] (Dkt. No. 45-3 at 5–6.) Defendant has failed to make any payment against this debt. (Compl. ¶ 63.)

On June 3, 2014, Defendant entered into a contract with Red Crabs, LLC, as a restaurant manager. (Compl. ¶ 68.) Defendant promised to manage the front office of the restaurant and use his status as an international singer to draw customers to Red Crabs, LLC. (Compl. ¶¶ 72–73.) On June 3, 2014, Plaintiff Tran gave Defendant $100,000.00, to be paid back beginning August 1, 2014 with 5% interest. (Compl. ¶ 70; Tran Aff. ¶ 6.) Defendant has failed to pay back this loan or fulfill his obligations under the employment contract. (Compl. ¶¶ 74–75.)

The undersigned finds that Plaintiff Tran has established sufficient facts to demonstrate that Defendant owes her $242,394.18 in compensatory damages and $23,538.62 in interest.[10]

### C. Plaintiff Baothu Huynh Nguyen

In November 2013, Plaintiff Nguyen met Defendant at a Buddhist temple in Savage, Minnesota. (Compl. ¶ 82; Nguyen Aff. ¶¶ 1–2.) After meeting at the temple, Defendant began communicating with Plaintiff Nguyen via Facebook. (Compl. ¶ 83.) Defendant borrowed and paid back a loan of $2,000.00 from Plaintiff Nguyen. (Compl. ¶¶ 84–85.) In May 2015, Plaintiff Nguyen gave Defendant an additional $700.00. (Compl. ¶ 86.) In July 2015, Plaintiff Nguyen gave Defendant $846.20 to purchase a plane ticket from California to Minnesota for a ticket he claimed was cancelled. (Compl. ¶¶ 88, 91–92.) Defendant lied about his plane ticket being

---

[9] Plaintiff alleges that payments on this loan were to begin on January 8, 2016. (Dkt. No. 53 at 4.) However, the copy of the promissory note Defendant signed lists February 9, 2016 as the date payments were to begin. (Dkt. No. 45-3 at 5–6.)

[10] The undersigned calculated the interest rate as follows. Twelve percent interest on the principal amount of $62,394.18 from February 9, 2016 to May 19, 2017, the date the Motion for Default Judgment was heard, for a total of $9,538.62 in interest. Five percent interest on the principal amount of $100,000.00 from August 1, 2014 to May 19, 2017, the date the Motion for Default Judgment was heard, for a total of $14,000.00 in interest.

cancelled. (Compl. ¶ 91.) On July 12, 2015, Plaintiff Nguyen gave Defendant an additional $5,000.00 to help recover his car from a tow company. (Compl. ¶¶ 93–94.) Defendant reached out to Plaintiff Nguyen for more money, which she initially refused. (Compl. ¶ 96.) After Defendant contacted Plaintiff Nguyen's mother, Plaintiff Nguyen agreed to give Defendant an additional $3,000.00. (Compl. ¶ 97.) On August 15, 2015, Defendant asked Plaintiff Nguyen to help him with a lease payment for Red Crabs, LLC. (Compl. ¶ 99.) Between July and August 2015, Plaintiff Nguyen gave defendant $17,546.20. (Dkt. No. 53 at 6.) Defendant's reasons for needing money were untrue and he has failed to pay Plaintiff Nguyen back for the outstanding loans. (Compl. ¶¶ 101–103.) In September 2015, Plaintiff Nguyen demanded Defendant repay the loans but Defendant has failed to do so. (Compl. ¶ 106.)

The undersigned finds that Plaintiff Nguyen has established sufficient facts to demonstrate that Defendant owes her $17,546.20.

### III. EVALUATION OF PLAINTIFF'S COMPLAINT

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). A defendant in default concedes the factual allegations of the complaint. *See, e.g., DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.2 (4th Cir. 2008); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Default does not, however, constitute an admission of the adversary's conclusions of law, and is not to be "treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Instead, the Court must "determine whether the well-pleaded allegations

in [the plaintiff's] complaint support the relief sought in [the] action." *Id.*

Thus, in issuing this Report and Recommendation, the undersigned Magistrate Judge must evaluate Plaintiff's claims against the standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure to ensure that the Complaint contains plausible claims upon which relief may be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining the analysis for examining a plaintiff's claims under a 12(b)(6) motion to dismiss). To meet this standard, a complaint must set forth "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether allegations are plausible, the reviewing court may draw on context, judicial experience, and common sense. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679).

### A. Fraud

Plaintiffs seek to recover on the tort claims of fraud and fraudulent inducement to contract. Virginia recognizes a separate tort of fraud even where the parties have agreed to a contract. *Station #2, LLC v. Lynch*, 695 S.E.2d 537, 540 (Va. 2010); *see also Abi-Najm v. Concord Condo, LLC*, 699 S.E.2d 483, 488–89 (Va. 2010). When a party perpetrates the alleged fraud before a contract between the two parties came into existence, the source of the duty allegedly breached cannot be the contract. *Abi-Najm*, 699 S.E.2d at 490; *See also Specialty Prods., Inc. v. Demolition Servs. Inc.*, No. CL12-8830, 2013 WL 9564185, at *5 (Va. Cir. Ct. Dec. 12, 2013) (internal citations omitted) ("Because fraud in the inducement to a contract occurs before the contract is formed and therefore before any contractual duties attach, an allegation of fraud in the inducement necessarily alleges a breach of the common-law duty not to defraud others and sounds in tort.").

The pleading standard for fraud is higher to ensure the defendant has notice of the alleged misconduct, to prevent frivolous suits, to eliminate fraud actions in which the facts are learned after discovery, and to protect defendants' reputation and goodwill. *Murphy v. Capella Educ. Co.*, 589 F. App'x 646, 652 (4th Cir. 2014). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). To state a claim for fraud that satisfies Rule 9(b), a plaintiff must "at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* (citing *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455–56 (4th Cir. 2013)).

To state a claim for actual fraud under Virginia law,[11] Plaintiff must plead the following six elements: "(1) a false representation, (2) of material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Brown v. Gilner*, No.1:10-cv-980, 2012 WL 4473086, at *4 (E.D. Va. Sept. 25, 2012) (quoting *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148 (1994)). That is, a finding of actual fraud requires a showing "that one has represented as true what is really false, in such a way as to induce a reasonable person to believe it, with the intent that the person will act upon this representation." *Evaluation Research Corp.*, 247 Va. 143, 148 (1994). Similarly, "if a defendant makes a promise that, when made, he has no intention of performing, that promise is considered a misrepresentation of a present fact and may form the basis for a claim of actual fraud." *Supervalu Inc. v. Johnson*, 276 Va. 356, 368 (2008).

The elements of fraud in the inducement are (1) false representation of material fact; (2)

---

[11] In this diversity action, the choice of law principles of the forum state, Virginia, govern. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Virginia law, the place of injury supplies the governing law in tort actions. *C.I.T. Corp. v. Guy*, 195 S.E.2d 659, 663 (Va. 1938); *Airlines Reporting Corp. v. Pishvaian*, 155 F. Supp. 2d 659, 633 n.9 (E.D. Va. 2001). Here, Plaintiff was injured in Virginia. Therefore, Virginia law applies.

reliance; and (3) inducement to enter the contract. *Abi-Najm*, 699 S.E.2d at 489. Additionally, in pleading actual fraud, a plaintiff must plead that the misrepresentation was made intentionally. *Murphy*, 589 F. App'x at 652.

Plaintiffs' Complaint supports a claim of fraud and fraudulent inducement to contract. Because Plaintiffs seek the same relief for each claim, the claims and legal analysis are similar, and the Motion for Default Judgment requests relief for fraud (Dkt. No. 43 at 3), this recommendation analyzes the elements required to plead an action for fraud.

Plaintiffs allege, and by failing to answer Defendant concedes,[12] that Defendant made false representations of heartfelt, sad, and tragic life stories to illicit the sympathy of Plaintiffs and solicit money from them. (Compl. ¶ 16.) The details supporting a claim of fraud as to each individual Plaintiff are summarized below.

### i. Fraud Claim as to Plaintiff Yen Kim Ly

As to Plaintiff Ly, as previously discussed, Defendant made false representations of material facts about his allegedly precarious financial situation, his intention to repay Plaintiff Ly shortly, and his false representations of heartfelt, sad, and tragic life stories, which he intentionally made to garner sympathy for the loans. (Compl. ¶¶ 25, 27–31, 35–41.) Plaintiff Ly relied upon these false representations and promises to shortly repay the loan when she loaned Defendant money. For example, Defendant claimed to put Tren Restaurant and Bar Inc., down as collateral for Plaintiff Ly's loan. (Compl. ¶¶ 27, 29.) Defendant misrepresented why he needed the loan, that he had any ownership interest in the restaurant, or that he had the authority to put the restaurant down as collateral. (Compl. ¶¶ 28, 31.) Furthermore, Defendant was aware that Plaintiff Ly intended to pay down her mortgage and Defendant assured Plaintiff that he needed

---

[12] FED. R. CIV. P. 8(6)(b) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

the loan for a short period to bridge expenses at the restaurant. (Compl. ¶¶ 36–37.) Defendant has failed to pay back $18,000.00 on the $20,000.00 he borrowed from Plaintiff Ly, which has resulted in damage to Plaintiff Ly. (Ly Aff. ¶ 7; Dkt. No. 53 at 3.)

### ii. Fraud Claim as to Plaintiff Mai Anh Tran

As to Plaintiff Mai Anh Tran, as previously discussed, Defendant made false representations of material facts about his financial situation and his intention to repay Plaintiff Tran. (Compl. ¶¶ 57–58, 62–65.) Defendant made these false representations intentionally to garner sympathy from Plaintiff Tran for the loans, upon which Plaintiff Tran relied. (Compl. ¶ 60.) For example, Defendant made false representations about his career being at risk over a gambling debt, a man he shot in high school and money he wanted to pay the family of the friend who took the blame for him, airline tickets he allegedly needed to purchase, co-workers' debts he needed to pay off, money for his parents, and money to pay off gang members. (Compl. ¶¶ 53–65.) Additionally, Defendant entered into a contract with Red Crabs, LLC as a restaurant manager. Plaintiff Tran owns forty percent of Red Crabs, LLC and made a $100,000.00 contribution based on Defendant's contract to manage the restaurant and use his position as an international star to bring business to the restaurant. (Compl. ¶¶ 68–81.) Defendant acknowledged the money he owed Plaintiff Tran and admitted to Plaintiff Nguyen that he will never pay Plaintiff Tran back for the loans. (Compl. ¶¶ 66–67.) Furthermore, Defendant never performed any duties as a restaurant manager. (Compl. ¶¶ 75–76.) As previously detailed, Plaintiff Tran has suffered $242,394.18 in damages because of Defendant's fraudulent misrepresentations, his failure to payback any of the money Plaintiff Tran loaned him, and his failure to manage Red Crabs, LLC. The undersigned finds that based on the Complaint, Plaintiff Tran has established that Defendant owes her $242,394.18 in compensatory damages and

$23,538.62 in interest.

### iii. Fraud Claim as to Baothu Huynh Nguyen

As to Plaintiff Nguyen, as previously discussed, Defendant made false representations of material facts about his financial situation and his tragic personal situation. (Compl. ¶¶ 84, 90–94.) Defendant made these false representations intentionally to garner sympathy from Plaintiff Nguyen and her mother to secure loans from Plaintiff Nguyen. (Compl. ¶¶ 84, 90–102.) Plaintiff Nguyen relied upon these false representations when she loaned Defendant money. For example, Defendant claimed to need money for plane tickets, to recover his car from a tow company, and for a lease payment on Red Crabs, LLC—a restaurant he did not own nor owe lease payments on. (Compl. ¶¶ 84–102.) Plaintiff Nguyen has loaned Defendant $17,546.20,[13] which Defendant has failed to pay back[14] and does not intend to pay back. (Compl. ¶¶ 100–07; Dkt. No. 53 at 6.). Plaintiff Nguyen has suffered damages in the amount of $17,546.20 for the money she loaned Defendant based on Defendant's false representations of material fact.

## IV. REQUESTED RELIEF

### A. Damages

In a default case, the plaintiff's factual allegations are accepted as true for all purposes except in determining damages. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). To support a claim for damages, a plaintiff must provide an appropriate basis for the Court to determine whether it is entitled to the relief sought. *See id.* In default actions in this district, "there can be no recovery over the amount pled in the complaint." *Sheet Metal Workers' Nat'l Pension Fund v. Frank Torrone & Sons, Inc.*, No. 1:04-cv-1109, 2005 WL 1432786, at *8

---

[13] In the Complaint, Plaintiff Nguyen initially alleged $17,550.00 in damages, later updated to $17,546.20. (Compl. ¶ 107; Dkt. No. 53 at 6.)

[14] Defendant paid back the first loan of $2,000.00 but has failed to pay back any subsequent loan despite Plaintiff Nguyen's demands. (Compl. ¶¶ 85, 106–07.)

(E.D. Va. June 1, 2005); *see also Cumberlander v. KCL Site Servs., LLC*, No. 08-994, 2009 WL 4927144, at *9 (E.D. Va. Dec. 17, 2009). A default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c). Rule 54(c) "operates to protect a defendant who chooses to default:"

> The theory of this provision is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action. It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award. . . . If defendant chooses not to proceed, liability cannot be increased.

*Sheet Metal Workers' Nat'l Pension Fund*, 2005 WL 1432786, at *8 (quoting 10 Fed. Prac. & Proc. Civ. 3d § 2663).

However, "[t]he exact amounts for interest, costs, and attorney's fees need not be pled specifically in the Complaint." *Sheet Metal Workers' Nat'l Pension Fund*, 2005 WL 1432786, at *9.

### i. Compensatory Damages and Pre-Judgment Interest

In their Complaint, which Plaintiffs filed *pro se*, they allege in the Introduction that they loaned Defendant over $314,500.00. (Compl. at 2). However, in Counts I through III Plaintiffs specify loans adding up to only $279,944.18. (Compl. at 4–14.) In their Complaint, Plaintiffs generally request compensatory damages, punitive damages, costs, and attorney's fees[15] for a total of $803,301.03. In the Motion for Default Judgment and at the hearing held on the Motion for Default Judgment, Plaintiffs' attorney asked for $454,953.25, plus punitive damages, costs, and attorney's fees without explanation as to the newly requested amount or a specific monetary amount as to costs and attorney's fees. (Dkt. No. 41.) Because Plaintiffs have asked for

---

[15] Costs and attorney's fees are generally requested but no amount is noted.

inconsistent damages in their pleadings, affidavits, and Motion for Default Judgment, the undersigned issued an Order directing Plaintiffs to supplement and clarify their damages calculations. (Dkt. No. 52) On June 26, 2017, Plaintiffs submitted a supplemental brief requesting $582,670.49 in compensatory damages. (Dkt. No. 53.)

Although Plaintiffs' supplemental memorandum on the issue of damages (Dkt. No. 53) and affidavits in support of their Motion for Default Judgment (Dkt. Nos. 44–46) at times clarify the compensatory damages pled in the Complaint, these documents also include additional damages not pled or accounted for in the Complaint. A default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c). Additionally, in default actions in this district there can be no recovery over the amount pled in the Complaint. *Sheet Metal Workers' Nat'l Pension Fund* 2005 WL 1432786, at *8; *see also Cumberlander*, 2009 WL 4927144, at *9. Therefore, where the supplemental memorandum or affidavits in support of Plaintiffs' Motion for Default Judgment add compensatory damages not pled in the Complaint, the undersigned calculated damages based only on the damages alleged in the Complaint. The undersigned applied the same logic for any issues related to pre-judgment interest for which Plaintiffs requested.

As previously detailed, the undersigned finds that Plaintiffs have established sufficient facts to demonstrate Defendant owes them the following amounts: Defendant owes Plaintiff Ly $18,000.00; Defendant owes Plaintiff Tran $242,394.18 in compensatory damages and $23,538.62 in interest as of May 19, 2017, the date of the Motion for Default Judgment; Defendant owes Plaintiff Nguyen $17,546.20.

### ii. Punitive Damages, Attorney's Fees, & Costs

Punitive damages may be recovered in an action for fraud where there is a showing of

actual malice. *Glasser v. Hagen, et al.*, No. 1:14-cv-1726, 2016 WL 521454, at * 2 (E.D. Va. Feb. 5, 2016) (quoting *Jordan v. Suave*, 247 S.E.2d 739, 741 (Va. 1978)). "Malice is demonstrated by 'ill will, malevolence, grudge, spite, wicked intention or a conscious disregard of the rights of another.'" *Brown v. Gilner*, No. 1:10-cv-980, 2012 WL 4473086, at * 5 (E.D. Va. Sept. 25, 2012) (citing *Lee v. Southland Corp.*, 219 Va. 23, 27 (1978)). "Virginia does not permit recovery of punitive damages except upon proof of a degree of aggravation in the critical state of mind above the threshold level required to establish liability for compensatory relief." *Sit–Set, A.G. v. Universal Jet Exch., Inc.*, 747 F.2d 921, 928 (4th Cir. 1984). In Virginia, punitive damages should not be awarded unless an element of malice goes "beyond mere shadiness in commercial dealings." *Id.* Lastly, pursuant to Virginia Code § 8.01-38.1, an award of punitive damages may not exceed $350,000.00.

The Court directed Plaintiffs to submit a supplemental brief detailing the punitive damages requested; support for such a request of punitive damages; and the amount of attorney's fees and costs associated with this action, including the necessary support for such a request. (Dkt. No. 52.) Plaintiffs submitted their supplemental memorandum in support of damages but did not include any information as to punitive damages, costs, or attorney's fees. (Dkt. No. 53.) The undersigned finds that Plaintiffs failed to demonstrate "proof of a degree of aggravation in the critical state of mind above the threshold level required to establish liability for compensatory relief." *Sit–Set, A.G.*, 747 F.2d at 928. The undersigned also finds that Plaintiffs have failed to provide the necessary information or support for an award of attorney's fees or costs associated with bringing this action. Accordingly, the undersigned recommends denying Plaintiffs' request as to punitive damages, costs, and attorney's fees associated with bringing this action.

## V. RECOMMENDATION

For the reasons set forth above, the undersigned Magistrate Judge recommends the entry of default judgment in favor of Plaintiffs Yen Kim Ly, Mai Anh Tran, and Baothu Huynh Nguyen against Defendant Dung Quoc Tran. The undersigned finds Plaintiffs are entitled to $301,479.00. Specifically, that Plaintiff Ly is entitled to $18,000.00; that Plaintiff Tran is entitled to $242,394.18 in compensatory damages and $23,538.62 in interest as of May 19, 2017; and that Plaintiff Nguyen is entitled to $17,546.20.

## VI. NOTICE

**By mailing copies of this Report and Recommendation, the parties are notified as follows. Objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.**

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record and to Defendant at the following address:

Dung Quoc Tran
8309 NW 105 Street
Oklahoma City, OK 73162-4018

Duy Truong
331 Ben Van Don
Phuong 1, Quan 4
Ste. 1610
Ho Chi Minh City, Viet Nam

August 23rd, 2017
Alexandria, Virginia

/s/
Ivan D. Davis
United States Magistrate Judge